ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUN 13 2017

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | Criminal Indictment |
| NORMA DOMINGUEZ (AKA NORMA DOMINGUEZ-RODRIGUEZ) | No. 1:17CR199 |

THE GRAND JURY CHARGES THAT:

**Count One**
*Money Laundering Conspiracy*
(18 U.S.C. § 1956(h))

1. Beginning in or about 2011, and continuing to on or about the date of this Indictment, the exact dates unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, NORMA DOMINGUEZ (aka NORMA DOMINGUEZ-RODRIGUEZ), did knowingly combine, conspire, and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 to wit:

a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, proceeds from the sale and distribution of a controlled substance, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of

specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b) with the intent to conceal and disguise the nature, location, source, ownership and control, of property believed to be the proceeds of specified unlawful activity, to knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented to be proceeds of specified unlawful activity, that is proceeds from the sale and distribution of a controlled substance, by a person at the direction of, and with the authorization of, a federal official authorized to investigate and prosecute violations of this section, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

## Background

2. During the above-listed time period, the defendant, NORMA DOMINGUEZ, managed a convenience store named "La Veracruzana" in Chamblee, Georgia.

3. La Veracruzana offered various services to its customers, including the ability to electronically transmit funds to other countries (commonly referred to as "remittances"). In order to transmit customers' funds internationally, La Veracruzana entered into agency agreements with various "money transmitters."

These money transmitters specialized in electronically wiring money and had agent locations throughout the United States and other countries. In practice, individuals seeking to use one of these money transmitters brought currency to an agent location (oftentimes, a convenience store or grocery store). The agent collected the funds along with certain information from the customer, such as the recipient's name and contact information, and provided the customer with a verification code that the recipient could use to retrieve the funds from another agent location. The money transmitters therefore provided a means for customers to securely and rapidly transmit funds throughout the world. During the above-listed time period, DOMINGUEZ wired funds internationally through La Veracruzana using the money transmitters' electronic wiring systems.

4. The money transmitters charged customers a fee for using their services. The money generated from this fee was split between the agent that processed the customer's transaction and the money transmitter. By way of example, an agency agreement between La Veracruzana and one money transmitter stated that La Veracruzana was entitled to 50% of the fees for wires sent to Mexico and 35% of the fees for wires sent to other countries. Each of the money transmitters prohibited its agents, including La Veracruzana, from charging customers additional fees or commissions for transmitting customers' funds.

5. The money transmitters were each registered with the U.S. Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), which permitted them to wire third party funds. During the above-listed time period, the Bank

Secrecy Act (31 U.S.C. § 5300, *et. seq.*) and its implementing regulations imposed certain recordkeeping and reporting requirements upon money transmitters and their agents.

6. Specifically, the Bank Secrecy Act and its implementing regulations required these money transmitters to file certain reports with FinCEN regarding financial transactions that involved suspicious or potentially illegal activity. 31 U.S.C. § 5318(g)(1); 31 C.F.R. § 1022.320(a)(2). These reports were commonly known as "Suspicious Activity Reports" (SARs). Pursuant to 31 C.F.R. § 1022.320(a)(2), the money transmitter was required to file a SAR if the financial transaction at issue involved at least $2,000 in funds and the business knew, suspected, or had reason to suspect that the transaction (or a pattern of transactions of which the transaction is a part):

    a. involved funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any Federal law or regulation or to avoid any transaction reporting requirement under Federal law or regulation;

    b. was designed, whether through structuring or other means, to evade any requirements of this chapter or of any other regulations promulgated under the Bank Secrecy Act;

4

      c. served no business or apparent lawful purpose, and the reporting money services business knew of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction; or

      d. involved use of the money services business to facilitate criminal activity.

7. Money transmitters were also required to maintain records related to certain high dollar transfers; for each transmission of $3,000 or more, money transmitters were required to record the sender's name and address. 31 C.F.R. § 1010.410(e).  At least some of the above-listed money transmitters imposed additional requirements upon their agents.

8. To further comply with the Bank Secrecy Act, the money transmitters mandated that agents undergo periodic training.  On or about August 26, 2013, DOMINGUEZ completed a money transmitter's anti-money laundering exam in which she correctly answered that if she encountered suspicious activity she should report the activity to the money transmitter's compliance department and that this particular money transmitter required her to obtain identification from customers wishing to send more than $2,000.

9. From 2013 through mid-2017, DOMINGUEZ, and other individuals known and unknown to the Grand Jury, used La Veracruzana to transmit over $5.7 million through the money transmitters' electronic wiring systems.  The vast

majority of these wires were directed to recipients in different countries, including, most typically, Mexico.

## Manner and Means

10. During the time period of the conspiracy, DOMINGUEZ accepted kickbacks from customers who sought to transmit drug proceeds out of the country. These kickbacks exceeded the set fees charged by the money transmitters and were in direct violation of the money transmitters' agreements with La Veracruzana.

11. DOMINGUEZ helped her customers hide the source of the funds by listing false sender names, addresses, and telephone numbers on the wires. DOMINGUEZ also intentionally "split" the wires into smaller amounts in the hopes of evading detection from the money transmitters' internal compliance programs.

12. On or about October 23, 2015, DOMINGUEZ transferred funds to Mexico for a cooperating law enforcement source in exchange for a kickback that exceeded the fees authorized by the money transmitters. The cooperating source claimed to have taken a break from "working" as a lot of people had been caught. The cooperating source claimed to have told the man who provided the money that she would only move the money and that he was responsible for crossing with the "merchandise," which the cooperating source also described as the "white stuff."

6

13. DOMINGUEZ and the cooperating source also discussed other individuals who brought money to La Veracruzana. DOMINGUEZ told the source that she had stopped moving money for a woman who was under investigation. The source asked if one group of people also moved "drugs" and DOMINGUEZ said that they did. DOMINGUEZ also mentioned that she had moved money for a man who wound up getting caught because someone had informed on him.

14. During their exchange, DOMINGUEZ explained to the cooperating source that the money transmitters had gotten stricter and required identification for certain types of transactions. DOMINGUEZ conducted multiple wire transfers to Mexico for the cooperating source that listed fake sender names, addresses, and telephone numbers.

15. On or about October 29, 2015, DOMINGUEZ transferred additional funds to Mexico for the cooperating source in exchange for a kickback that exceeded the fees authorized by the money transmitters. During the course of an exchange at La Veracruzana, the source asked if DOMINGUEZ could process twenty transfers to Mexico by that Saturday (October 31, 2015). DOMINGUEZ stated that doing twenty transfers in that amount of time would be difficult but finally agreed that she could make the transfers by Sunday evening (November 1, 2015). DOMINGUEZ conducted multiple wire transfers to Mexico for the cooperating source that listed fake sender names, addresses, and telephone numbers.

All in violation of Title 18, United States Code, Section 1956(h).

**Count Two**
*Sting Money Laundering*
(18 U.S.C. §§ 1956(a)(3)(B) and 2)

16. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 15 of this Indictment as if fully set forth herein.

17. On or about October 23, 2015, in the Northern District of Georgia, the defendant, NORMA DOMINGUEZ, aided and abetted by others known and unknown to the Grand Jury, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented to be proceeds of specified unlawful activity, that is, proceeds from the sale and distribution of a controlled substance, by a person at the direction of, and with the authorization of, a federal official authorized to investigate and prosecute violations of this section.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

**Forfeiture**

18. Upon conviction of one or more of the offenses alleged in Counts One through Two of the Indictment, the defendant, NORMA DOMINGUEZ (aka NORMA DOMINGUEZ-RODRIGUEZ), shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or

personal, involved in the money laundering offenses and all property traceable to such property including, but not limited to, a sum of money in United States currency representing the total amount of money involved in each offense for which the defendant is convicted.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above; all pursuant to Title 18, United States Code,

Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c).

A  True  BILL

_____
FOREPERSON

JOHN A. HORN
  *United States Attorney*

THOMAS J. KREPP
  *Assistant United States Attorney*
Georgia Bar No. 346781

ALISON B. PROUT
  *Assistant United States Attorney*
Georgia Bar No. 141666

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

10